GUIDRY, Judge.
This is a suit in redhibition filed by Ro-bie’s Food Centers, Inc. seeking rescission of a sale of a grocery computer “check out system”. Defendants are Modern Business Machines, Inc. (hereafter Modern), Sweda International, Inc. (hereafter Sweda) and Data General Corporation (hereafter Data). Plaintiff appeals the granting of summary judgment dismissing its suit against Data.
FACTS
On February 19, 1981, plaintiff purchased a Sweda Supermarket 80s computer system with accessories from Sweda and their authorized dealer, Modern. The complete system was to be installed in plaintiffs grocery store in Abbeville, Louisiana. On November 28, 1983, plaintiff purchased a second Sweda Supermarket 80s system to be installed in its store in Jeanerette. The price for both systems was $208,590.18. Plaintiff has had numerous problems with both systems. On March 6, 1985, plaintiff made formal demand for rescission of both sales. Suit was filed against Sweda and Modern on April 19, 1985. Sixteen months later, plaintiff amended its petition to add Data as a party defendant. Data answered urging that it only supplied some of the hardware for the system, which hardware was without defect. Data further alleged that the defects in the system involved only the software which was manufactured by Sweda. Data cross-claimed against Sweda and Modern for indemnity and/or contribution. Data filed an exception of prescription and a motion for summary judgment. The trial court overruled the exception of prescription but granted the summary judgment dismissing plaintiffs demands against Data. Plaintiff appealed.
*55 ANALYSIS
The Louisiana Supreme Court, in Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152, at pages 1153, 1154 (La.1983), discussed the law of this state and the criteria to be applied in determining whether or not a summary judgment should be granted and stated:
“La.C.C.P. art. 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor ‘if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law.’ Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); cf. Fed.Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La.App. 1st Cir.), writs, den., 403 So.2d 68 (La.1981); cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).
To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).”
Data contends that there is no disputed issues of fact material to a finding that: (a) it never entered into a sales agreement or service contract with plaintiff; (b) it did not design the systems which were furnished to plaintiff nor did it perform any services in connection with the installation or maintenance thereof; (c) Data only provided some hardware components which were eventually incorporated in the computerized check-out system; (d) there were no defects in the hardware components furnished by Data and employed by Sweda in the system designed and furnished to plaintiff; and, (e) the systems were designed, assembled, marketed and identified as the Sweda Supermarket 80s system. In support of these allegations of fact, Data offered the affidavit of Charles Yon, senior attorney of Data, and the depositions of Michael Benton, Modern’s chief technician, Stuart Mitchell, owner of Modern, Jim Dunn, Sweda’s technician specialist, Don Merritt, Sweda’s regional sales manager, and Don Stilley, Sweda’s vice president.
There were no countervailing affidavits filed by plaintiff or the other two defendants, although plaintiff did file the depositions of Robie Russo, owner of Robie’s Food Centers, Inc., and his son, Jim Russo, who co-manages the stores. On appeal, plaintiff contends that Jim Dunn, Sweda’s technician, stated in deposition that there was a defect in the hardware attributable to Data. We disagree. While Dunn refers in his testimony to a past problem with some hardware, he did not testify that it was the hardware manufactured by Data, nor that the defect was redhibitory in nature.
The record shows that Data supplied some of the hardware for the computer system purchased by plaintiff. However, as the trial judge observed, this hardware had no “life of its own” without the design and software applied by Sweda to create the computer system. According to the undisputed evidence in the record, the hardware furnished by Data was without defect when it left the point of production and plaintiff offered no evidence showing otherwise.
*56 Since we find no material issue of fact, we turn to the question of whether Data is entitled to judgment as a matter of law. In Austin’s of Monroe, Inc. v. Brown, 474 So.2d 1383 (La.App. 2d Cir.1985), plaintiff purchased a computer from defendant to control and monitor its cash drawers, sales, accounting and inventory in connection with its restaurant business. When the computer did not perform as promised, plaintiff sued his vendor, Brown, and Commodore Computers, manufacturer of the hardware used in the Brown system. In discussing Commodore’s liability, our brethren stated at page 1388:
“The restaurant argues that Commodore, as the hardware manufacturer, should know that its computers, when sold to a buyer, are like blank sheets of paper on which the seller will write programs customized to the buyer’s needs, and that Commodore should be liable in contract as well as in tort for not warning or providing standards to the seller-programmer of its hardware to protect against the result produced by faulty or improper programming.
The manufacturer of a non-defective, even though substantial, component of a thing assembled and created by another should not be liable to the buyer of that thing for redhibitory vices in the assembled and created thing. In this sense, the assembler or creator of the thing from component parts effectively becomes the manufacturer of the thing. Compare Amin v. Head, 419 So.2d 529 (La.App. 2d Cir.1982), writ denied. See Peterson v. Coleman Oldsmobile, Inc., 393 So.2d 372 (La.App. 1st Cir.1980), where GMC, the manufacturer of the cab and chassis, on which another built a customized motor home, was found not liable in redhibition to the buyer of the motor home because the defects were not in the GMC component but in the other components added by the customizer. The seller of the motor home and the customizer-builder were held liable in redhibition to the buyer. CC Arts. 2520, 2545.
Here, Brown was the “customizer”-manufacturer of the system who put the software on the non-defective Commodore hardware. The defects were in components other than the Commodore component and Commodore should not be liable in tort or in contract to the restaurant under the circumstances of this case.
Commodore’s relationship with Brown before or after their October 1980 agreement does not render Commodore liable to the restaurant. Commodore was simply the manufacturer of hardware that Brown sold the restaurant in March 1980. Commodore did not contractually, at any time, render itself liable to the restaurant for any defect in the system Brown sold the restaurant. We find no error in the judgment dismissing the restaurant’s demands against Commodore.”
In applying this logic to the case sub judice, Sweda is the “customizer” manufacturer. Sweda designed the system and put its software on the nondefective Data hardware. Data, as “manufacturer of a non-defective, even though substantial, component of a thing assembled and created by another should not be liable to the buyer of that thing for redhibitory vices in the assembled and created thing”.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.